THE EASTON AND AMBOY RAILROAD COMPANY v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. In giving effect to section 7, article IV., of the constitution, the courts give paramount consideration to the general object of the act—the general purpose of the legislative scheme. The general object of the act being ascertained, the legislature may include in it provisions of a multiform character, designed to carry into execution the legislative purpose, which are not inconsistent with or foreign to the general object of the act.

2. The general object of the act of 1872 (*Pamph. L., p.* 1356) being the appropriation of a tract of land under tide-waters to public uses, for the purposes of navigation and commerce—*Held,* that the grant to Jersey ( ity of that part of it next to the city with a duty to improve the same for a basin, with power to erect wharves and to regulate and control the use of such basin and wharves, and to charge dockage and wharfage: and the dedication of the residue of the tract for a public basin, might be embraced in one act—the grant of one part to the city and the dedication of the other to the public being simply means to carry into execution the general object of the legislative scheme.

3. The operative words in the grant to Jersey City, "the state does hereby grant," import a grant *in præsenti,* and confer an immediate estate. When these words are used in a legislative grant, unless there be other clauses restraining the operation of the words of present grant, they must be taken in their usual legal sense to import an immediate transfer of title.

4. If there be conditions subsequent annexed to such a grant, no one but the state or its representative can take advantage of a forfeiture arising from the failure to perform such conditions.

5. The legislature may of its own will impose upon municipal bodies duties involving the outlay of money in improvements, such as establishing docks, wharves, &c. The grant to Jersey City by the act of 1872 required no acceptance. It executed itself, and no one but the state could repudiate or recall it.

6. The fifth section of the act conferred upon the owners of lands adjacent to the public basin privileges analogous to the privileges of riparian owners in the public waters of the state. These privileges will abide in the landowner until revoked by the state, and be a legal right, for the violation of which an action will lie.

On demurrer to the declaration.

The legislature, on the 4th of April, 1872, passed an act entitled "An act to cede to the mayor and common council of Jersey City certain lands of the state now and heretofore under the tide-waters of Communipaw bay, and to establish a tide-water basin adjacent thereto." *Pamph. L.* 1872, *p.* 1356.

After reciting, "Whereas, the riparian commissioners of the State of New Jersey, in their reports for the years eighteen hundred and seventy-one and seventy-two, have called the attention of the legislature to the fact that Jersey City is without public docks, and have recommended that a part of the large basin, laid out by the commissioners in eighteen hundred and sixty-four, be conveyed to the mayor and aldermen of Jersey City for public uses," it was enacted—

1. That the said state doth hereby grant to the mayor and aldermen of Jersey City, in fee simple, so much and such parts of the lands which are now under tide-water, or were heretofore under tide-water, of said Communipaw bay, commencing—[here follows description by metes and bounds].

2. That the said mayor and aldermen, by their appropriate board, shall have full control and regulation of the basin and wharves and land conveyed to them; and they shall be and are hereby required to improve the same with all convenient despatch, in such manner that at least one-third of the area of said lands shall be flowed by the tide-water and made navigable for such vessels as the citizens or inhabitants of said city, or persons doing business therein, may, under the control and regulation of said board, desire to use said basin.

3. That for the title hereby conveyed the said city shall pay into the treasury of the state or give to this state a bond for such sum of money and on such terms as to payment and interest as the board of riparian commissioners shall, under all the circumstances of the case, and taking into consideration the public purposes to which said lands are to be applied, fix and determine as a proper and equitable compensation to the state for such title, and until the giving of such bond, or the payment of such money, said city shall not enter on said

lands; *provided,* nothing in this act contained shall prejudice or impair the rights of the shore owners to said lands.

4. That the said city may fill up, reclaim and make wharves of not exceeding two-thirds of the area of said lands, and may charge dockage and wharfage for the use of said basin and wharves; *provided,* said charges are reasonable; or they may lease the whole or any part of the said lands for a term of years, to be improved in the manner prescribed in this section.

5. That there shall be established, adjacent to the lands hereinbefore described and granted, a tide-water basin, embracing all that tract of land under water described as follows: commencing—[here follows description by metes and bounds]; that the above tide-water basin in this act described shall be and remain, and the same is hereby dedicated as and for a tide-water basin; and owners of any land which shall adjoin the said tide-water basin, their successors, heirs and assigns, may charge wharfage, dockage and other charges incident to the use of wharves; and it is hereby declared that this provision shall have the effect of a contract, so that the said tide-water basin shall be and remain such forever; but so that the said tide-water basin shall be dredged and kept in order without expense to the state.

6. That the board of riparian commissioners shall reduce to writing a description of so much and such parts of said lands as aforesaid, and file a map and description in the office of the secretary of state of this state, and duplicates of said map and description in the office of the clerk of the county of Hudson, authenticating the same in such case by their signatures, and reciting such parts of the act as shall indicate their authority and the purpose and object of said map and description, and said map and description, or duly certified copies thereof, shall be full and plenary evidence of the title under this act of the city to the land so described and granted to the mayor and aldermen of Jersey City by the first section of this act.

Easton and Amboy R. R. Co. v. Central R. R. Co. *52 N. J. L.*

Argued at November Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and SCUDDER.

For the plaintiff, *Thomas N. McCarter.*

For the defendant, *B. Williamson* and *Frederic W. Stevens.*

The opinion of the court was delivered by

DEPUE, J.    The plaintiff founds the right on which this suit is based on the act of the legislature above recited.    The material averments in the declaration are, in substance, that the plaintiff was seized and possessed of a tract of land adjacent to and bounded upon the tide-water basin established by the fifth section of the act; that by reason of the establishment of the said tide-water basin, and the ownership of lands adjacent thereto and bounded thereon, the plaintiff, in virtue of the provisions of the said act, became and was lawfully entitled to navigate the waters of said basin throughout its whole extent, and to have and enjoy, by means thereof, access to, through and across the same and all parts thereof to and from the land of said plaintiff adjacent thereto, and was entitled to charge, collect and receive wharfage, dockage and other charges, profits and emoluments incident to the use of said basin and of such adjacent land of the plaintiff, and was entitled to have the waters of said basin throughout its whole extent free, open and unobstructed, so that the same could be freely navigated throughout its whole extent, and could also be dredged out and kept in order; that the defendant, contriving and unlawfully intending to deprive the plaintiff of its use and enjoyment of a large portion of said tide-water basin, and of its access from its said land to said basin, and of the dockage, wharfage and other profit and emolument to which said plaintiff was and would have been entitled for the use of said basin by other persons, did unlawfully cast and threw into the waters of the said basin a large quantity of earth, stones, &c., and did fill up, obstruct and exclude the water from a large part of said tide-water

basin, so that a large portion of the said tract of land of plaintiff which formerly adjoined the waters of the said basin and was accessible therefrom, now no longer adjoins the waters of said basin, but is obstructed and separated therefrom by the said obstructions and filling in, by means whereof the plaintiff has been deprived of the use of that portion of said basin adjoining the said land so filled up and obstructed, and of its right to navigate and use that part of said basin so filled up and obstructed, and of the wharfage, dockage and other emolument and profit which it was entitled to receive, and otherwise would have received, from the public and from persons navigating in and using said basin, and by reason of the reduction in size of said basin occasioned by said filling in and obstruction by the said defendant, has been put to great inconvenience and damage in the use and enjoyment of that portion of said basin which remains open and unobstructed.

The prefatory averments in the declaration with respect to the grant to the city, contained in the first section of the act, were introduced to designate the boundaries and fix the location of the tide-water basin. They serve also to present the constitutional question discussed. But so far as is disclosed on this record, the plaintiff's cause of action rests upon the averments contained in the foregoing abstract.

To the declaration the defendant filed a demurrer, specifying several causes of demurrer, of which those will be noticed that were relied on at the argument.

*First.* That the act is in violation of section 7, article IV., of the constitution, which declares that " to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title; " that the said act embraces more objects than one, and that the plaintiff cannot maintain an action based upon a legislative act which is unconstitutional.

The constitution does not prohibit the union in one act of several subjects, using that term in a limited sense; the in-

terdict is against the union in one act of such things as have no proper relation to each other. In giving effect to this constitutional provision, the courts give paramount consideration to the general object of the act—the general purpose of the legislative scheme. The general object of the act being ascertained, the power of the legislature is vindicated to include in it provisions of a multiform character, designed to carry into execution the legislative purpose, which are not inconsistent with or foreign to the general object of the act. The decisions to this effect in our own courts are numerous. A citation of a few is all that is necessary. *State, ex rel. Walter,* v. *Town of Union,* 4 *Vroom* 351 ; *Rader* v. *Township of Union,* 10 *Id.* 509 ; *Grover* v. *Trustees of Ocean Grove,* 16 *Id.* 399, 402 ; *Bergen County Savings Bank* v. *Township of Union,* 15 *Id.* 599 ; *In re Commissioners of Elizabeth,* 20 *Id.* 488, 495.

Prior to the act of 1872 the state was the owner of a tract of land lying under the tide-waters of Communipaw bay, part of which was within the limits of Jersey City. These lands were connected with the navigable waters of Hudson river and New York bay. On this tract the riparian commissioners had, in 1864, laid out a large basin. An examination of the several provisions of the act of 1872 makes it manifest that the object of that legislation was to appropriate this tract of land, the property of the state, to public uses, for the purposes of navigation and commerce. To accomplish that end, the legislature ceded to Jersey City that part of the premises lying in the cove adjoining the city, which is described by metes and bounds in the first section of the act. The residue of the tract described by metes and bounds in the fifth section was dedicated to public use. The cession to the city was not of property to be owned and used by it, or disposed of by it in its discretion. The preamble of the act recites, that the attention of the legislature had been called to the fact that Jersey City was without public docks, and that the riparian commissioners had recommended that a part of the large basin laid out in 1864 be conveyed to the city for

public uses. By the fourth section the city was empowered to fill up and reclaim two-thirds of the area of said lands, and make wharves thereon, and to charge dockage and wharfage for the use of said docks and wharves. The second section imposed a duty upon the city to improve the premises granted to it in such a manner that at least one-third of the area thereof should be overflowed by the tide-water and made navigable for such vessels as the citizens or inhabitants of said city, or persons doing business therein, might, under the control and regulation of certain municipal authorities, desire to use said basin. The third section prescribes the compensation to be paid by the city for the title conveyed to it to be such sum of money as the riparian commissioners should fix and determine as a proper and equitable compensation to the state for such title, taking into consideration the public purposes to which the said lands were to be applied.

By the act of cession the city took title upon a trust to hold to public uses, with a duty to improve the premises and a power to regulate and control the use, and to erect wharves for the emolument of the city.

The fifth section does not purport to be a grant. No grantee is named, and no words of grant are used. By this section the state established a tide-water basin and dedicated it to public uses. The gift is to the public, and *ex necessitate rei* for public uses. *New Orleans* v. *The United States*, 10 *Pet.* 662. That the lands dedicated might be utilized for such uses, the owners of lands adjacent to the basin were authorized to charge dockage, wharfage and other charges incident to the use of wharves, and were empowered by implication to erect docks and wharves fronting on the basin. The privileges granted to the owners of adjacent lands are analogous to those which, by the law of this state, are incident to the ownership of lands lying on navigable waters, and were conferred in order to put the former on a footing with the owners of lands on tidal streams, with respect to the privileges incident to adjacency thereto.

The object of the act of 1872 was the appropriation of lands owned by the state to public uses. The first and fifth sections simply define the means by which that object should be effected, and the means prescribed are germane to the object of the act. The title prefixed expresses the object with more precision than was necessary. Under that title it was competent for the legislature to define the uses and purposes to which the cession to Jersey City was made and the tide-water basin was established, and the means by which those purposes should be accomplished. We find no constitutional infirmity in the act in this respect.

*Second.* That the declaration did not contain the averments necessary to show that the cession to Jersey City had taken effect. The argument under this head proceeded on two grounds—(1) that the cession to the city was conditional, and (2) that it required acceptance by the municipal government. Under the first of these subdivisions reliance was placed upon the third section of the act, which required payment by the city of a consideration, and on section six, which provided that a map and description of the premises should be made by the riparian commissioners and filed in the office of the secretary of state, and in the office of the clerk of the county of Hudson, as evidence of the title of the city to the lands so described and granted to it.

The operative words in the first section, "the state does hereby grant," import a grant *in præsenti,* and confer an immediate estate. When these words are used in a legislative grant, unless there be other clauses restraining the operation of the words of present grant, they must be taken in their usual legal sense to import an immediate transfer of title. *Railroad Company* v. *Smith,* 9 *Wall.* 95; *Shulenburgh* v. *Harriman,* 21 *Id.* 44, 62; *Leavenworth Railroad Company* v. *United States,* 92 *U. S.* 733, 741; *Glasgow* v. *Hortez,* 1 *Black* 595. If there be conditions subsequent annexed to such a grant, no one but the state or its representatives can take advantage of a forfeiture arising from a failure to perform such conditions. *Railroad Company* v. *Smith, Shulen-*

*·burgh* v. *Harriman, supra.* The third section of the act is plainly a condition subsequent to the vesting of the grant. The legislature evidently contemplated a postponement of the time when the city should take possession and enter upon the improvement of the premises. The consideration to be paid for the title was to be fixed by the riparian commissioners, who are state officers, and payment thereof was a condition precedent only with respect to the right of the city to enter ·upon the lands and take possession of them. The state alone ·could enforce a forfeiture, and resume the title on failure to perform the condition.

The lands granted to the city are sufficiently identified by ·the description contained in the act. The map and description required to be made and filed by the riparian commissioners by the sixth section were simply evidence of title provided by law for the city's convenience. Such a map and description were not necessary to perfect the city's title. The ·city took title under the present grant contained in the act, ·and the map and description were, to quote the language of the section, to be " full and plenary evidence of the title *under ·this act* of the city to the lands so described and granted." The neglect or failure of the riparian commissioners to make and file such a map and description would not defeat the grant. *Railroad Company* v. *Smith,* 9 *Wall.* 95 ; *Glasgow* v. *Hortez,* 1 *Black* 595. A collection of the decisions of the federal courts on the construction and effect of legislative grants will be found in 21 *Myer's Federal Decisions,* in the sections from 1013 to 1410. They fully sustain the views here expressed.

Nor did the grant require an acceptance by the city. The legislature was dealing with a municipality with respect to a matter relating to municipal affairs. The legislature may at ·its own will create or extinguish a municipality, or impose ·upon it a new charter or an amendment to its charter. It may also impose duties involving the outlay of money in improvements, such as ·laying out and making roads, establish-:ing public markets, wharves or docks and the like. Usually

these matters are effected by a grant of power to buy lands and make the improvements thereon; but that the legislature may of its own will impose a duty upon the municipal authorities in this respect which they cannot decline, is undoubted. *Cooley Const. Lim.* (*5th ed.*) 204, 282, 283; 1 *Dill. Mun. Corp.* 23; *Rader* v. *Township of Union*, 10 *Vroom* 509, 512, 517; *State, Freeholders of Hudson*, v. *The Paterson Avenue and Secaucus Road Commissioners*, 12 *Id.* 83, 87; *S. C.*, 13 *Id.* 608. Where the state makes a grant of lands to a municipality, acceptance, payment of a consideration, expenditure of moneys in appropriating the lands to the designated use, are circumstances entering into the power of the state to resume the grant, but are not conditions precedent to the consummation of the grant, unless expressly made so by its terms. The grant to Jersey City executed itself, and no one but the state could repudiate or recall it. It may also be observed that nothing appears in the record to show that the grant to the city of one parcel and the dedication of the other were so interdependent that the failure of the former necessarily carried with it the extinguishment of the latter.

*Third.* That the declaration disclosed no cause of action, in that the allegations in it are of a public nuisance created by the defendant, without an averment of special damage sustained by the plaintiff therefrom. It is the well settled rule, that no action will lie for a public nuisance unless the plaintiff has sustained some special damage.

The fifth section of the act conferred upon the owners of lands adjacent to the public basin privileges analogous to the privileges of riparian owners in the public waters of the state. Whether the paragraph in that section which purports to give that provision the effect of a contract shall avail to annex these privileges as property rights beyond the control of subsequent legislatures, need not be considered in deciding upon the sufficiency of this pleading. No fact is disclosed by this record which puts to the test the existence or validity of any contract with these landowners, or the capacity of the legislature to embrace in an act appropriating the state's lands to

a public use, a contract with private owners for the maintenance of that use forever. At all events, the privileges conferred will abide in the landowner until revoked by the state, and be a legal right, for the invasion of which an action will lie. In *Stevens* v. *The Paterson and Newark Railroad Co.,* 5 *Vroom* 532, 553, the Chief Justice said : " It is true, as the defendants have put these obstructions in this river without authority of law, such obstructions are a public nuisance. But I think it is a nuisance which, according to the allegations on the record, inflicts a peculiar damage on the plaintiff; and if that be so, it is admitted this action is well brought. The plaintiff, until the state interferes and deprives him of the privilege, has the right to pass directly from his property on to the shore of this navigable river. He has been deprived of the right by the tort of the defendants, and this is a damage which apparently is individual and peculiar to himself." In that case the riparian owner, whose right to sue was sustained, had neither erected a wharf nor in any manner improved the connection of his lands with the navigable water of the river. The averments in the declaration bring this case within the principle adjudged in that case.

There should be judgment for the plaintiff on the demurrer.