IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1892.

## THE MAYOR AND ALDERMEN OF JERSEY CITY v. THE AMERICAN DOCK AND IMPROVEMENT COMPANY.

1. A statute declaring "that the state doth hereby grant to the mayor and aldermen of Jersey City, in fee simple," a certain defined tract of land under tide water, passes the title *in presenti* without acceptance on the part of the city.

2. The title to such granted lands being in the act devoted for the creation of public wharves, is indefeasible except by statute, and cannot be lost or impaired by the acts or neglects of the municipality.

3. The lands thus set apart are removed from the dominion of the riparian commissioners; a conveyance of them by such officials is a mere nullity.

4. *Quære.* Has a riparian owner any right in such lands?

In ejectment.

Argued at November Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiff, *Robert S. Hudspeth, William D. Edwards* and *Gilbert Collins.*

For the defendant, *Benjamin Williamson* and *Joseph D. Bedle.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    On the 4th of April, 1872, a statute was enacted, whose title is in these words, viz.: "An act to cede to the mayor and common council of Jersey City certain lands of the state now and heretofore under the tide waters of Communipaw bay, and to establish a tide water basin adjacent thereto."

Then follows the preamble and first section, which reads thus:

"WHEREAS, the riparian commissioners of the State of New Jersey, in their reports for the years 1871 and 1872, have called the attention of the legislature to the fact that Jersey City is without public docks, and have recommended that a part of the large basin, laid out by the commissioners in 1864, be conveyed to the mayor and aldermen of Jersey City for public uses; therefore,

"1. *Be it enacted,*" &c.: "That the said state doth hereby grant to the mayor and aldermen of Jersey City, in fee simple, so much and such parts of the lands which are now under tide water, or were heretofore under tide water, of said Communipaw bay, commencing," &c.

In the second section it is provided "that the mayor and aldermen, by their appropriate board, shall have full control and regulation of the basin and wharves and land conveyed to them;" and they shall be and are hereby required to improve the same with all convenient despatch, in such manner that at least one-third of the area of said lands shall be flowed by the tide water and made navigable for such vessels as the citizens or inhabitants of said city, or persons doing business therein, may, under the control and regulation of said board, desire to use said basin.

Section 4 relates to the consideration of the grant, and is expressed in the following terms:

" That for the title hereby conveyed the city shall pay into the treasury of the state, or give to this state, a bond for such sum of money and on such terms as to payment and interest as the board of riparian commissioners shall, under all the circumstances of the case, and taking into consideration the public purposes to which said lands are to be applied, fix and determine as a proper and equitable compensation to the state for such title, and until the giving of such bond, or the payment of such money, said city shall not enter on said lands," &c.

By the fifth section of this act it was further provided that there should be established, adjacent to the submerged lands just mentioned, a tide water basin—a certain tract of land under water, which is particularly described—and declaring that the above tide water basin in this act described shall be and remain, and the same is hereby dedicated as and for, a tide water basin.

Before leaving this act, and in this connection, the first objection interposed in the cause by the defendant may here be commodiously disposed of. That objection was, that as this statute makes provision for the creation of wharves and also of a basin, the act is in conflict with that provision of the constitution of the state which requires that " every law shall embrace but one object."

Upon this point it is enough to say that this subject was considered, in its relation to this same enactment, in the case of *The Easton and Amboy R. R. Co.* v. *The Central R. R. Co.*, 23 *Vroom* 267, and this court then concluded that the exception in question had no legal basis. We then thought, as we think now, that this act embraces but one purpose and one scheme, and that the erection of these wharves and this basin is the appropriate effectuation of such purpose and scheme. For present purposes, therefore, this act will be deemed to have all the force of constitutional legislation.

Viewing it in this light, it becomes of the first importance to ascertain its exact legal effect. That effect, as it seems to me, was plainly and incontestably this : It vested, at the instant

that it became a law, the title to the tract of submerged land now in controversy forever in the mayor and aldermen of Jersey City. That the statute has this immediate force is not questionable, for the reason that its expression " that the said state doth hereby grant," &c., in fee simple, is susceptible of no other meaning. It was in this sense that these words were interpreted by this court in the case just cited.

And while it is thus clear that this was a legislative conveyance of an estate in fee *in presenti,* it is equally clear that it had not the force of vesting in the city this tract as its private property. The municipality was made the recipient and custodian of it exclusively for public uses. This purpose is expressly declared in the preamble above cited, and it is likewise expressed in all its regulations and provisions. The proposition is self-evident.

Being invested, then, with the fee, and holding the premises in trust for the public, the conclusion, so decisive of most of the issues in this case, necessarily results, that the municipality was and is devoid of all capacity to impair the interests thus committed to its keeping. The grant had been made to it without its assent; it was not necessary for it to accept it; it had not the competency to refuse to execute its duties with regard to it which the law-making power had seen fit, in the plentitude of its authority, to impose upon it. The beneficial interest in the property had been given to the public, and consequently the city could not alien it, nor could it be taken in execution for the payment of the municipal debts. In my opinion, it is entirely clear that such an interest as this could in no wise be impaired either by lapse of time or by the acts or neglects of the muncipal body to whom it had been confided. Unless the legislature itself interfered, it would remain forever unalterably devoted to the purposes that had been the motive for its creation. These legal rules are too thoroughly established to justify the citation of authority showing their prevalence.

Regarding, then, this grant to Jersey City as possessed of the nature and qualities thus imputed to it, and considering it

in relation to the facts present in the record before us, it has not seemed to me that any legal question of considerable difficulty or abstruseness remains for solution.

The essential features of the case are thus presented.

The action is in ejectment by Jersey City to recover the submerged lands embraced in the legislative grant just explicated.

The statute, of course, forms the basis of the plaintiff's title, but under the terms of the act the city could not recover unless its right to the possession of the premises was made to appear. This could not be done without proving a compliance with the requisition of the third section of this law.   It will be remembered that the regulation therein contained is to the effect that the city should pay into the state, or give to the state a bond for such sum of money, and on such terms as to payment and interest, as the board of riparian commissioners should, under all the circumstances of the case, and taking into consideration the public purposes to which said lands were to be applied, fix and determine as a proper and equitable compensation to the state for such title.   Following this direction, the section then ordains " that until the giving of such bond, or the payment of such money, said city shall not enter on said lands."

In order to show on the part of the city a fulfillment of this prerequisite to the right of taking the land into possession, the plaintiff proved at the trial the adoption, on the 9th of November, 1872, by the board of riparian commissioners, of a certain preamble and resolution to the effect that the mayor and aldermen of Jersey City should give to the state, in fulfillment of the statutory provision just stated, a bond for the sum of $1,000, payable in one year, with interest at the rate of seven per cent. per annum.   In completion of this part of the plaintiff's case it was further shown that, on the 4th day of March, 1885, a bond bearing that date was duly executed by the city, conditioned for the payment of $1,000 in one year, with interest at the rate of seven per cent., and which was thereupon delivered to the treasurer of the state, and that the principal and interest were subsequently paid to such treasurer.   This bond

was produced at the trial, with the receipt of the state treasurer duly endorsed thereon.

This is a summary of the plaintiff's right of action as disclosed at the trial.

In defence it is insisted that this proof failed to show a fulfillment of the condition expressed in the third section of the act just referred to. The supposed flaw in the proof on this head is, that the bond called for by the resolution of the board of riparian commissioners was one to bear date on or about the 9th day of November, 1872, which was the date of the resolution passed by it, and that the bond actually given bore date March 4th, 1885, nearly thirteen years after the resolution of the commissioners.

But the satisfactory reply to this exception is that the statute obviously gave the right to the city to take possession at its own discretion with regard to time, and that it was not required to give the bond until it proposed to do that act, so that the time of executing the bond was fixed neither by the act nor by the resolution of the board of riparian commissioners. In this respect it is deemed the act of the city conformed strictly with the requirement of the section under consideration and with the action of the riparian commissioners.

Nor is it deemed that if this were otherwise, and that the condition had not been in strictness exactly performed, that the defendant could take advantage of such omission after the state had accepted the money tendered in full satisfaction of its claim, arising under the statutory provision in question. If the state has received this money and still retains it as a satisfaction of the requirement of the condition, it is not perceived how this defendant—that in this connection must be regarded as trespasser upon these lands—can be permitted to interpose its dissent.

We think the plaintiff showed by due proof both its title and its right of possession.

The next exception to the plaintiff's case taken by the counsel of the defendant is formulated in his brief in these words, viz.: "The refusal by the city to accept the grant, and the

action by the riparian commissioners, induced by such refusal, and the subsequent acquiescence, constituted a substantial revocation by the state of the grant and the assent of the city thereto."

As already shown, the title to these premises was vested in the municipality by the statute on the 4th of April, 1872, and it did not capacitate itself to take possession, by the giving of its bond, until the 4th of March, 1885. During this long period of time, extending through nearly thirteen years, the city neglected to execute the trust confided to it, and, on the contrary, permitted the defendant to acquire title to the property from the riparian commissioners, saw the defendant, at large expense, fill up and improve the land, and subjected it to the municipal taxes. It is this series of circumstances that is relied upon to operate as "a substantial revocation by the state of the grant" in question.

The fallacy of this proposition is apparent at a glance. How can it be held that the state has revoked this grant when the state has in no wise, either directly or indirectly, participated in the affair? The assumption that the board of riparian commissioners was the agent of the state, and, as such, conveyed the premises to the defendant, is conspicuously unfounded. This board no more represented the state in this affair than did the chosen freeholders of the county represent it. The board was vested with power to dispose of the submerged lands owned by the state, but the tract of land here in dispute had been alienated by the state itself and the legal title placed in the plaintiff for certain public purposes, so that it was in no respect whatever within the disposing power of these commissioners. The riparian commissioners having no dominion over these premises, could no more convey them than they could transfer to the defendant the court house of the county. Nor would even the joint action of the board and the city give a semblance of legality to the transaction. If the municipal corporation had, by the most formal of writings, assented to the commissioners' grant, or had joined in it as a party, the instrument would have been an absolute

nullity.   This .result proceeds from the characteristics of the property in question, and which have been heretofore fully defined; the title is vested in the city, in trust for the public, and is, therefore, inalienable and indefeasible, except by legislative action.   The composition of the so-called title of the defendant, it will be observed, consists of the acquiescence and neglect of the trustee of a public use and the deed of a board having no power over the subject.   Such a claim seems to me singularly futile.

In the last place, it was insisted that the plaintiff's right of action, as exhibited at the trial, was incomplete on another ground.

This exception relates to a certain clause in the third section of the act already, in part, recited, which declares that "nothing in this act shall prejudice or impair the rights of the shore owners to said lands."

It was argued that this defendant, as the owner of the *ripa*, had certain rights in the tract of lands in dispute which the plaintiff was bound to extinguish before it could take possession.

With respect to the nature of the rights thus asserted, the arguments of counsel were discreetly vague; and it must be owned that it is not easy to suggest, or even to imagine, what "right to" these premises existed in this defendant as shore owner.   Under the force of certain statutory provisions, the interest of the shore owner in the submerged lands in front of his property is this: When such lands are to be sold, the riparian commissioners are directed to appraise them, and, by way of preference, they are then to be offered to the riparian proprietor at the price thus fixed.   It is obvious that such a pre-emption gives to the owner of the *ripa* no present right in or to the property; it touches neither the title or possession; it is a privilege, the fruition of which is entirely future and potential merely, and appears to be defeasible at all times by the act and at the will of the state.   It is difficult to believe that this uncertain and precarious prerogative was that right of the shore owner in these submerged lands that

is preserved beyond impairment by this proviso. But at present this inquiry is immaterial, for it is certain that there is no such title or right vested in this defendant that can serve as a bar to the present action. The statute has vested the proprietary right in the plaintiff, and its right of possession is made to depend, not on the extinguishment of any supposed equity seated in the shore owners, but on the single condition to pay to the state the sum ascertained by the riparian commissioners.

The plaintiff is entitled to recover.