CITY OF MOBILE v. SULLIVAN TIMBER CO.

(Circuit Court of Appeals, Fifth Circuit. April 8, 1904.)

No. 1,312.

1. LAND UNDER NAVIGABLE WATERS—OWNERSHIP.

The state of Alabama, when admitted into the Union, acquired by the compact the title to the soil below high-water mark under the navigable waters within the limits of the state which had not been previously granted.

2. SAME—CONVEYANCE—TRUSTS.

By Act Ala. Jan. 31, 1867 (Laws 1866–67, p. 307), granting to the city of Mobile so much of the shore and soil under the Mobile river as was within the city's boundaries, the city acquired title to the land so conveyed as trustee for the public, and could not convey the same for the benefit of riparian proprietors.

3. SAME—IMPLIED LICENSE—CUSTOM.

Where a city held the title to the land under a navigable river within the city's limits below high-water mark in trust for the public, a custom under which riparian proprietors used the land for the erection of wharves, etc., was not available to support a contention that the city had thereby been divested of its title to the land.

4. SAME—ESTOPPEL.

Where a city held the title to land under a navigable stream in trust for the public, and a river commission was authorized to establish wharves, bulkheads, boom lines, etc., the fact that neither the city nor the commission objected to the construction of expensive works, including bulkheads, etc., in the river, by a riparian proprietor, did not estop the city to deny such proprietor's right to continue to occupy the same.

5. SAME—CONDEMNATION.

Where a riparian proprietor, with the knowledge of a city holding the title to land under a navigable stream for the benefit of the public, constructed an expensive work, including wharves, booms, bulkheads, etc., on the land, in order to render the river available for use in lumbering operations, and thereafter such proprietor paid taxes and fees to the city for the privilege of erecting and maintaining such structures, the city was only entitled to a restoration of the land so used on payment of reasonable compensation to such proprietor for the loss sustained.

Appeal from the Circuit Court of the United States for the Southern District of Alabama.

L. H. & E. W. Faith, for complainant.

Gregory L. & H. T. Smith, for defendant.

Before McCORMICK, Circuit Judge, and SPEER and PARLANGE, District Judges.

SPEER, District Judge. This cause presents an appeal from a decree of the Circuit Court for the Southern District of Alabama. It appears from the record that the Sullivan Timber Company, a cor-

¶ 1. See Navigable Waters, vol. 37, Cent. Dig. § 184.

poration of the state of Florida, had been sued in ejectment by the city of Mobile to recover two pieces of real estate. This was riparian land. One lot was between Old Water street and the channel of the Mobile river on its western side, and the other was between the channel of the Mobile river and a line parallel with and 100 feet east of the high-water mark on the western side of the river. These actions were brought by the city of Mobile to assert its title not only to the shore and part of the river bed, but also to the immediately abutting upland. The title to this land was originally in the United States government, and it passed to the state of Alabama by virtue of the act of Congress under which the state was admitted into the Union. Subsequently the title passed to the city of Mobile by virtue of certain statutes. The first was approved January 31, 1867 (Laws 1866–67, p. 307), and provides that the shore and the soil under Mobile river situate within the boundary lines of the city of Mobile, as defined and set forth in section 2 of the act to incorporate the city of Mobile, approved February 2, 1866 (Laws 1865–66, p. 202), "be and the same is hereby granted and delivered to the city of Mobile." The second section declares the municipal authorities of the city trustees "to hold, possess, direct, control and manage the shore and soil herein granted in such manner as they may deem best for the public good." Again, on December 5, 1896 (Acts 1896–97, p. 49), the General Assembly of Alabama enacted—

"That the absolute and unconditional title and right to all real estate, rights, and easements, pertaining, or incidental, to any real estate, or any right therein, or thereto, heretofore vested in the mayor, alderman and common council of the city of Mobile, or in the port of Mobile, or in the present city of Mobile, or in any municipal corporation of Mobile, however said corporation may have been named or called, whether held in trust, or otherwise, except such as have heretofore vested in the trustees for the holders of the bonds of the city of Mobile, is hereby vested absolutely, and unconditionally in the city of Mobile, to be by it held, managed, controlled and disposed of, as to it may seem best."

These statutory grants to the city of Mobile are in accordance with the salutary principle embodied in the Constitution of many of the states, including that of the state of Alabama, by which it is guarantied that the navigable waters of the state shall be forever preserved as public highways.

It is alleged that the Sullivan Timber Company, which was the defendant in the actions of ejectment brought by the city, had taken possession of the shore and soil in controversy, and had erected thereon certain wharves and other obstructions, which set out into the river midway between the shore and what is termed "the point of practical navigability." These structures were wholly disconnected with the shore and with the navigable channel, and have the effect to obstruct all communication between the shore and the navigable part of the stream. By these structures, it is insisted that the defendant has inclosed a part of the Mobile river, and, excluding all other persons therefrom, uses this to float its own barges and logs. It is insisted by the city that the action of ejectment was brought to maintain the communication between the upland belonging to the city with the navigable river, and to assert its public ownership, in order that all portions of this important navigable stream and harbor,

upon which definite rights of wharfage have not been granted, may remain available to the ·general public in accordance with the act under which the state was admitted into the Union. These actions having been instituted in the state circuit court of Mobile county, Ala., the defendant thereto, the Sullivan Timber Company, caused them to be removed into the United States Circuit Court, and, after removal, there filed the bill on which the decree here complained of was rendered.

By the averments of this bill the following contentions are presented for the complainant: First. That the city of Mobile claimed the lands under the act of January 31, 1867, which vested the title in the city as trustee for the public good. That this enactment, in connection with the act of February 18, 1895 (Acts 1894–95, ·p. 815), as amended by the act of December 5, 1896 (Acts 1896–97, p. 49), vested the absolute and unqualified legal title to the shore and soil under Mobile river in the city of Mobile, discharged and freed from the trust created by the act of 1867. That this was the sole title of the city of Mobile. That the municipal corporation for whose benefit these enactments had been passed had been annulled and abolished on February 11, 1879, and, as a substitute therefor, a new municipal corporation was created, called the "Port of Mobile." That the Legislature of Alabama gave this new corporation no power, title, authority, or jurisdiction to the shore and soil under the Mobile river. However, by an amendment made to its charter on December 8, 1880, the corporation was given power to establish and declare by ordinance a designated line along the river front, within the corporate limits of the city, beyond which wharves and other structures should not be built. That, acting under the authority last mentioned, in 1882, the police board of the port of Mobile established such channel lines, and declared that wharves and similar structures should neither extend beyond nor fall short of said lines. By the act of December 10, 1886, the municipality was again entitled the "City of Mobile," and it was given power to establish channel lines, but with the proviso that, if the Legislature should create a harbor commission, the power in the city of regulating wharf and boom lines should be suspended so long as the commission was clothed with that power. That on February 28, 1887, such a commission, with such power, was created. It was organized in 1887, and is now exercising the powers and jurisdiction given to it by the act. The bill further alleges that the timber company owns the upland in front of which is the locus in quo; that its predecessors in title and itself, at great expense, built wharves, bulkheads, booms, etc., on the shore and over the water in front of their upland out to the established lines; that at still further expense it had built in the lower marsh land, and improved the upland—built sawmills, etc., thereon; that these improvements were made under permission obtained from the city of Mobile and the Mobile river commission, respectively, and the work was done under the supervision of the appellant's civil engineer. The bill further avers that the timber company, which is the appellee here, as the owner of the upland, had the right of access from its upland to the navigable portion of said river in front of it, and to the wharves

built out thereto, subject to such reasonable regulations as the city might prescribe. This right, it is averred, was secured by the common law of the state of Alabama, as well as by the Constitution and statute laws thereof.

There are the usual prayers for process and for temporary injunction pendente lite. Another and more important prayer is that on the hearing:

"The court will be pleased to perpetuate such injunction, and decree that the city of Mobile and all persons claiming under it be perpetually enjoined and restrained from prosecuting said ejectment suits aforesaid, and from molesting or disturbing your orator in the possession of said property out to the said channel lines of Mobile river, as established, and from asserting title or claim thereto, and, further, that the court may be pleased to quiet the right, title, and possession of orator in its wharf, bulkheads, and improvements from orator's upland out to the said channel line of Mobile river aforesaid."

Motions to dismiss the bill for want of equity and demurrers thereto were overruled, and certain amendments followed. The bill as amended was retained in court, and upon the pleadings and proof the court rendered a decree in favor of the Sullivan Timber Company, and the city of Mobile brought this appeal.

A reference to the decree granted by the court will discover that it is of the most sweeping character. By its perpetual injunction it finally concludes the appellant from asserting any claim whatever to, or from any interference with, the use and possession by the Sullivan Timber Company of its wharves, docks, booms, and other improvements erected by it, in front of its upland, on the lands and premises in controversy. It clearly has the practical effect to vest the fee to this important wharf property, which may be highly essential to the future prosperity of the port, in the Sullivan Timber Company, and its successors in title.

We are of the opinion that while that company may possess equities of importance, which the court, after proper inquiry, may feel authorized to protect, the decree transcends any right to which the complainant is entitled, and has the effect to reverse the policy of the state, intended to secure to the public access to its navigable streams and harbors. This policy is increasingly important in view of the already augmented commerce of the Gulf ports, and the phenomenal augmentation which will necessarily be caused by the construction of the Isthmian Canal.

While the briefs of opposing counsel in this case afford a great plentitude of authority, and, indeed, exhibit commendable industry and research, our determination with regard to the title of the city must be controlled by the latest and most authoritative decision upon the subject. This is found in the case of Mobile Transportation Co. v. Mobile (decided by the Supreme Court of the United States January 5, 1903) 187 U. S. 479, 23 Sup. Ct. 170, 47 L. Ed. 266. There it is conclusively settled that the state of Alabama, when admitted to the Union, became entitled to the soil under the navigable waters below high-water mark within the limits of the state, not previously granted. It is further held in the same case that the legislation of the state conveying to the city of Mobile the shore and soil under Mobile river is not unconstitutional,

as impairing the vested rights of owners of grants bordering on Mobile river, for the reason that such grants do not relate to land bordering on tidal streams; and further that, as the state held the lands below high-water mark as trustee for the public, it had the right to devolve the trust upon the city of Mobile. In short, this case adjudicates the title of the lands in controversy under the acts and resolutions of Congress, the ordinances of Alabama, and the acts of the General Assembly of the state hereinbefore enumerated. It is difficult, in view of this decision, to understand how any controversy can be maintained as to the title of the city. Many decisions of the Supreme Court of Alabama are reviewed in the learned opinion of Justice Brown. His conclusions are, as stated, that the title to all lands under tidal waters in Alabama below high-water mark are in the state, and subject to such disposition as that made by the state in this case in behalf of the city of Mobile. He continues:

"The status of real estate within a particular jurisdiction is not so much one of contract as of policy, which may be changed at any time by the Legislature, provided no vested rights are disturbed. Of course, if riparian proprietors have acquired the title to the property below high-water mark by a grant or prior possession good against the state, they could only be dispossessed by proceedings in eminent domain. The act of 1867 declared no more than that the rights possessed by the state in the shore and soil under Mobile river were granted to the city. We see nothing objectionable in this act. What the state held, it held as trustee for the public, and it had a right to devolve this trust upon the city of Mobile. What it had not, it could not grant, and the rights of the riparian proprietors were neither enlarged nor restricted by the act." "Upon the whole," the learned justice concludes, "we are of opinion that there is no defect upon the face of the title of the city which the transportation company was entitled to avail itself of."

It is true that in that case the court expressly declined to pass upon the defenses of estoppel by reason of improvements made upon this land with the acquiescence of the city, license to build wharves, and payment of taxes; the unconstitutionality of the act of 1867, because the title of the act does not describe its subject; want of power in the state to convey its title to the city; and the statute of limitations. The Supreme Court makes no deliverance upon these subjects, because they are all of a local nature, and present no federal question. Some of these are, however, in the case at bar, for the reason that jurisdiction of the cause is now taken because the controversy is between citizens of different states.

Starting, then, with this authoritative demonstration that the legal title to the locus in quo is in the city, upon what equity can there be based a right in the complainant to the perpetual injunction granted, which will forever debar the city from the assertion of that title?

It is urged in behalf of the appellee that its structures were erected under a license granted by the Mobile river commission. This, however, seems to stand exclusively upon the nonaction of that commission, rather than upon any express permission. Surely it will take something more than proof of the quiescence of a commission like that to estop the municipality which holds title for the public benefit from proceeding with its duty to protect the public interest. Estoppels are not favored by the law, and this would

seem especially true when by such estoppel it is attempted, by the omission or indifference of officials, to finally conclude the rights of the public to a public use. The alleged immemorial custom of persons to erect wharves on such broad harbor lines as those of the Mobile river and the adjacent waters, even if clearly demonstrated, can have no legal effect against the assertion by the state of its right to control the wharf lines of its navigable streams. For a custom to be valid, it must be lawful; and it can never be lawful for the citizen or a corporation to take possession of property belonging to a state, or a municipality created by it, hold it indefinitely, and justify that conduct by proof of custom. Indeed, did the claim of the appellee depend upon a positive and perpetual grant from the city, if given without proper consideration, it would be in, this case of no more avail than the quiescence of the commission or the immemorial custom on which the appellee relies. The rights of the public cannot be divested in such manner. In the case of Mayor of Jersey City v. American Dock & Improvement Company (N. J.) 23 Atl. 682, Chief Justice Beasley, for the court, declares:

"Nor would even the joint action of the board and the city give a semblance of legality to the transaction. If the municipal corporation had, by the most formal writing, assented to the commission's grant, and had joined in it as a party, the instrument would have been an absolute nullity. This result proceeds from the characteristics of the property in question, and which have been heretofore fully defined. The title is vested in the city in trust for the public, and is therefore inalienable and indisposable, except by legislative action. The composition of the so-called title of the defendant, it will be observed, consists of the acquiescence and neglect of the trustee of a public use, and the act of a board having no power over the subject. Such a claim seems to be singularly futile."

It is true that the act of 1896 to which reference has been made seeks to make a change in the character of this property and the manner in which it may be disposed of, but, since this was long after the concurrence upon which the appellee places reliance, it does not affect the question.

It is, however, contended by the appellee that it has paid to the city fees and taxes for the privilege of erecting its structures; that these were accepted; that its work was done in compliance with the rules and regulations of the commission, and under the supervision of the city engineer; that neither the city of Mobile, nor the river commission, ever made any objection or protest against its expensive work, such as filling in of the lowlands, construction of bulkheads, wharves, and booms; that the city of Mobile stood silently by and permitted all this to be done without objection, and without challenge of the occupation being made by the appellee during a long series of years. Upon these facts it is urged that it would now be unconscionable to permit the city to oust the appellee, and thus inflict upon it the great loss which would necessarily result. It seems highly probable that such facts make a meritorious showing for suitable relief, on proper pleadings. It is equally clear that these contentions could not forever defeat the right of the city to control the wharfage within its jurisdiction. A simple illustration

will show how untenable is the appellant's claim on this subject. The defendant's structures are in their nature temporary; its business, of a character possibly limited by the available timber supply. When the uses of its structures have departed, they will rapidly decay. Can it be insisted that, because of its license to erect them, it can retain the title to the riparian soil upon which they stand? If this were true, a licensee erecting structures of the most perishable character might acquire, without consideration, wharf rights as valuable as the docks on the Mersey at Liverpool, or the piers on the Hudson at New York. While, therefore, this claim must be denied, it does not follow that the appellee is without a remedy. If its structures have been erected, and its outlay and expenditure have been made, because of a license granted by the city, before the city, for its own purposes, can reassume control of the real estate in dispute, there should be a just accounting, and ascertainment and allowance of compensation for the losses the appellee will incur because of the negligent or unjustifiable action of the city authorities. The true equity seems to be found on the median line between the contentions of the controverting parties. The city, for the public welfare, is entitled to control its river front, except where the title to its wharves is parted with in compliance with positive law. If it is deemed necessary by the city to cause the removal or destruction of the appellee's wharves, sawmills, and booms, a judicial estimate should be made of the damage to the appellee thus incurred. Since, however, there are no averments or prayers in the bill before the court which will justify such direction, it will be incumbent upon the appellee, who was the complainant in the Circuit Court, to amend the bill in such manner as to avail itself of the relief and compensation, which may be ascertained by an appropriate inquiry.

In view of these considerations, we determine that the decree of the court below be modified as follows, and it is accordingly ordered: That the permanent injunction granted be set aside, and the temporary injunction pendente lite be reinstated. That the appellee, who is the complainant in the Circuit Court, have leave within 30 days from the date whereon the mandate of this court shall be made the judgment of the Circuit Court to amend its bill, and by such amendment offer to restore to the appellant the real estate in dispute upon the payment of such compensation as may, by agreement between the parties, or upon judicial inquiry, appear to be equitable and just, for the losses and damages, if any there be, which it may appear the complainant will sustain because of the revocation by the city of its implied license to erect said structures. That in case such suitable amendment, with appropriate prayers, is made, the bill as amended will proceed as usual in equity. In case, however, the appellee, the complainant in the Circuit Court, shall not exercise the option offered of amending his said bill, it is directed that at the expiration of the time above specified the same shall be dismissed at the cost of complainant. That the cost of this appeal be taxed against the appellee.